UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| ODINAKA JOHN EKEOCHA, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 25-454 (RC) |
| | : | | |
| v. | : | Re Document No.: | 9 |
| | : | | |
| U.S. DEPARTMENT OF STATE, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

### MEMORANDUM OPINION

GRANTING DEFENDANTS' MOTION TO DISMISS

### I. INTRODUCTION

In 2018, Plaintiff Odinaka John Ekeocha, a Nigerian citizen, invested $500,000 in an American company to qualify for the employment-based, fifth preference ("EB-5") immigrant investor visa program. Over six years have passed since he filed his initial visa petition, and over two years have passed since his application was deemed complete. The next step in the process is for Plaintiff to complete an interview at the United States Embassy in Lagos, Nigeria. But the United States Department of State ("State Department") has yet to schedule that interview. Plaintiff believes that this delay violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 555(b), and the Fifth Amendment's Due Process Clause. He seeks declaratory and injunctive relief compelling the State Department and United States Department of Homeland Security ("DHS") to adjudicate his visa. Defendants move to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons explained below, the Court grants Defendants' motion to dismiss.

## II.  BACKGROUND

### A.  Statutory and Regulatory Background

As part of the Immigration Act of 1990, Congress created the EB-5 immigrant investor visa program, which permits foreign investors to obtain lawful permanent residence in the United States.  *See* Pub. L. No. 101-649, § 121(a) (1990) (codified in 8 U.S.C. § 1153(b)(5)).  Investors seeking EB-5 immigrant status must make an investment meeting a minimum dollar amount and create full-time employment for ten or more U.S. citizens or non-citizens with work authorization.  8 U.S.C. § 1153(b)(5).  The path to obtain lawful permanent residence through the EB-5 program involves several steps.  First, the foreign investor must file a Form I-526, Immigration Petition by Alien Entrepreneur with United States Citizenship and Immigration Services ("USCIS") seeking classification as an EB-5 immigrant investor.  *See* 8 U.S.C. § 1154(a)(1)(H); *Feng Wang v. Pompeo*, 354 F. Supp. 3d 13, 17 (D.D.C. 2018).  If USCIS approves the petition, it is then sent to the State Department's National Visa Center ("NVC") for visa pre-processing.  *See* 8 U.S.C. § 1154(b); *Feng Wang*, 354 F. Supp. 3d at 17; *Mottahedan v. Oudkirk*, No. 23-cv-3486, 2024 WL 124750, at *1 (D.D.C. Jan. 11, 2024).

The State Department receives information from consular posts worldwide to determine how many visa numbers are available for each category of visa.  *See Feng Wang*, 354 F. Supp. 3d at 17–18.  When the number of approved petitions exceeds the supply of visa numbers available for that category for a given month, the State Department identifies a "cut-off date."  *Id.* at 18.  Only eligible beneficiaries who filed their I-526 petitions earlier than that date are eligible for a visa number at that time.  *Id.*  This means that a visa will not be available to a foreign national until applicants who filed I-526 petitions before him have received visas.  *See id.*; 8 U.S.C. § 1153(e)(1) (stating that visas "shall be issued to eligible immigrants in the order

in which a petition of each such immigrant is filed"). Thus, it is not enough to have an approved petition; a petitioner must still wait for a visa number to become available, which, as the D.C. Circuit has observed, "may take years." *Mirror Lake Vill., LLC v. Wolf*, 971 F.3d 373, 375 (D.C. Cir. 2020); *see Bega v. Jaddou*, No. 22-cv-2171, 2022 WL 17403123, at *2 (D.D.C. Dec. 2, 2022), *aff'd sub nom.*, *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 336 (D.C. Cir. 2023).

When the State Department determines that a visa number is available and that the application is "documentarily complete," it schedules the applicant for an interview by a consular officer. *See* 22 C.F.R. § 42.62; *Asim v. Blinken*, No. 24-cv-638, 2024 WL 3338778, at *1 (D.D.C. July 8, 2024); U.S. Dep't of State, *Immigrant Visa Process*, https://travel.state.gov/content/travel/en/us-visas/immigrate/the-immigrant-visa-process/step-8-scan-collected-documents/step-9-upload-and-submit-scanned-documents.html [https://perma.cc/B49M-ZB7C] (hereinafter *Immigrant Visa Process*) (last visited Nov. 19, 2025). The State Department's website informs applicants that "NVC will work with the appropriate U.S. Embassy or Consulate to schedule an [interview]," but that it "cannot predict when [the applicant] will be scheduled for an interview." *Asim*, 2024 WL 3338778, at *1. The embassy informs NVC "what dates they are holding interviews, and NVC fills these appointments in a first-in, first-out manner." *Immigrant Visa Process*. After the petitioner is interviewed, the consular officer "must" issue or refuse the visa. *See* 22 C.F.R. § 42.81(a). If the visa is issued, the investor may travel to the United States to apply for admission. *See* 8 C.F.R. § 211.1. If lawfully admitted, the investor becomes a permanent resident on a conditional basis. *See* 8 U.S.C. § 1186b(a).

3

## B. Factual Background

Plaintiff is a citizen of Nigeria. Compl. at 2, ECF No. 1. On November 12, 2018, he invested $500,000 in Civitas Capital Group, a Texas Corporation authorized by USCIS to participate in the EB-5 investor program. *Id.*; Pl.'s Opp'n to Defs.' Mot. Dismiss ("Pl.'s Opp'n") at 1, ECF No. 10. His investment met the requirements to qualify for the EB-5 program. Compl. at 1, 5. Plaintiff claims that he was "induced into this investment by the promise of a Green Card." *Id.* at 5.

On December 4, 2018, he filed his Form I-526 petition. *Id.* at 3. The petition was approved on June 14, 2022, and subsequently transferred to the NVC. *Id.* NVC notified Plaintiff that it had completed processing and was waiting for an interview date at the United States Embassy in Nigeria for consular processing and issuance of his immigrant visa. *Id.* Plaintiff has yet to be invited for an interview. *Id.* He is apprehensive because of this delay and believes that he has been denied the benefit of his investment. *Id.* at 4.

On February 18, 2025, Plaintiff filed this lawsuit against the State Department and DHS (collectively, "Defendants" or "the Government") alleging that such delay violates the APA and his Fifth Amendment due process rights. *Id.* at 5. He seeks relief under the Mandamus Act, 28 U.S.C. § 1361, and the APA, 5 U.S.C. § 706(1),[1] requesting: (1) a declaratory judgment that Defendants' actions violate his due process rights, (2) a declaratory judgment that Defendants' actions violate the APA, (3) an order compelling Defendants to complete the processing of his immigrant visa application, (4) an order granting him the costs of litigation including reasonable attorney's fees, and (5) additional relief as is "just and proper." *Id.* at 6–7.

---

[1] Although Plaintiff cites 5 U.S.C. § 555(b), the cause of action for "compel[ing] agency action unlawfully withheld or unreasonably delayed" is 5 U.S.C. § 706(1). *See, e.g.*, *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008).

The Government has moved to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  *See* Defs.' Mot. Dismiss ("Defs.' Mot.") at 1, ECF No. 9.  Plaintiff filed an opposition, and the Government filed a reply.  *See* Pl.'s Opp'n; Defs.' Reply in Further Supp. of Mot. Dismiss ("Defs.' Reply"), ECF No. 13.  The motion is fully briefed and ready for this Court's review.

### III.  LEGAL STANDARDS

When a defendant moves to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), "the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence."  *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91 (D.D.C. 2020) (citation modified).  Courts "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim upon which relief can be granted."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 552 (2007).  "[D]etailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *id.* at 555, but "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Although a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555–56 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## IV.  ANALYSIS

In their motion to dismiss, Defendants advance five arguments: (1) Plaintiff lacks standing to sue DHS because it is not responsible for scheduling Plaintiff's consular interview, (2) the State Department has no mandatory, non-discretionary duty to schedule an interview, (3) the scheduling of an interview is committed to agency discretion, (4) any delay here is not unreasonable, and (5) Plaintiff fails to state a cognizable constitutional claim.  *See* Defs.' Mot. at 1–2; Defs.' Reply at 15.  The Court addresses each of these arguments below.

### A.  Standing

Defendants first contend that DHS should be dismissed as a defendant because "it has completed its role in the process, has no role in scheduling visa interviews, and has no authority to allocate consular services abroad."  Defs.' Mot. at 10.  The Court agrees with Defendants that Plaintiff lacks standing to bring claims against DHS.  A plaintiff has standing to proceed against a defendant only when an order compelling that defendant to act on Plaintiff's petition "would redress [Plaintiff's] alleged injur[y]."  *Al-Gharawy v. U.S. Dept. of Homeland Sec.*, 617 F. Supp. 3d 1, 9 (D.D.C. 2022) (quoting *Abulhawa v. U.S. Dep't of the Treasury*, 239 F. Supp. 3d 24, 36 (D.D.C. 2017)).

Plaintiff claims that DHS continues to play an "active and indispensable role in the Plaintiff's immigration process" because it is responsible for issuing Permanent Resident Cards (commonly known as "Green Cards"), which Plaintiff might become entitled to if he is issued a visa.  Pl.'s Opp'n at 7.  He asserts that his claims are "not directed at consular scheduling or visa allocation alone, but rather at the broader administrative delay in concluding the EB-5 process."  *Id.* at 8.  It is true that, if Plaintiff's visa is ultimately issued after a consular interview, DHS will play a further role in his immigration, for instance at the border.  But for purposes of standing,

the relevant question is "whether the Court could order DHS . . . to take some action, at present, that would remedy the delay in adjudication of Plaintiff['s] visa[]." *Al-Gharawy*, 617 F. Supp 3d at 10.

The parties agree that DHS has completed its initial duties with respect to the adjudication of Plaintiff's visa petition. *See* Pl.'s Opp'n at 7 ("Plaintiff acknowledges that USCIS has approved the initial Form I-526 petition."); Defs.' Mot. at 10. The next procedural step is the scheduling of an interview at the U.S. Embassy in Nigeria, which, as Plaintiff acknowledges, is the responsibility of the State Department, not DHS. Pl.'s Opp'n at 7. Thus, with respect to DHS, there is no relief that the Court could order that would remedy the *current* delay in adjudicating Plaintiff's visa. Further, while Plaintiff claims that he is challenging the delay in the EB-5 process generally, the relief he seeks is the completion of "the processing of his immigrant visa application." *See* Compl. at 5. DHS is responsible for issuing Green Cards only after such process has been completed, and Plaintiff does not seek to compel DHS to issue a Green Card. DHS is thus unable to provide the relief Plaintiff requests: the processing of his visa application. Accordingly, the Court concludes that Plaintiff lacks standing to bring his claim challenging the State Department's delay against DHS.

### B. Unreasonable Delay Claim

Plaintiff brings claims of undue delay under the Mandamus Act and APA. The standards for evaluating these claims are functionally identical, as claims of undue delay under the APA turn on "whether the agency's delay is so egregious as to warrant mandamus." *See In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984). The remedy of mandamus is "a drastic once, to be invoked only in extraordinary circumstances." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189

(D.C. Cir. 2016) (citation modified).  Plaintiff must demonstrate "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists."[2] *Id.*  "The party seeking mandamus has the burden of showing that its right to issuance of the writ is clear and indisputable." *Id.*  In the context of undue delay, this means that a plaintiff must show that the agency "failed to take a discrete action that it is required to take and that the delay was unreasonable." *Adan v. Blinken*, No. 24-cv-591, 2024 WL 5168521, at *2 (D.D.C. Dec. 19, 2024) (quoting *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023)).

Defendants argue that Plaintiff's claims under the Mandamus Act and APA fail because (1) the State Department does not have a non-discretionary duty to schedule a visa interview, (2) scheduling visa interviews is an activity committed to agency discretion, and alternatively (3) any delay is not unreasonable as a matter of law.  *See* Defs.' Mot. at 10, 18, 22.  The Court need not decide Defendants' first two contentions because it agrees that the delay here is not unreasonable as a matter of law.  It will therefore assume that the Government has a non-discretionary duty to schedule Plaintiff's interview and turn to evaluating the delay.  *See, e.g.*, *Asim*, 2024 WL 3338778, at *3 (following the same approach in similar case); *Adan*, 2024 WL 5168521, at *2 (following the same approach and collecting cases).

---

[2] Under the Mandamus Act, "[t]hese three threshold requirements are jurisdictional; unless all are met, a court must dismiss the case for lack of jurisdiction."  *Burwell*, 812 F.3d at 189.  Under the APA, however, courts have found that the failure to identify a clear duty to act is a claim defect, rather than a jurisdictional defect.  *See, e.g.*, *L'Association des Americains Accidentels v. Dep't of State*, 633 F. Supp. 3d 74, 80 (D.D.C. 2022) ("The issue of whether the Department's delay or suspension violated a mandatory duty is thus a merits questions, not a jurisdictional question.").  Because the Court finds that the delay here is not unreasonable as a matter of law, without deciding whether there is a non-discretionary duty, this distinction is not material to the ultimate disposition of the case.

To assess whether the State Department's delay in scheduling Plaintiff's interview is unreasonable under the Mandamus Act or APA, courts in this Circuit apply the six-factor test outlined in *Telecommunications Research & Action Center v. FCC* ("*TRAC*"), 750 F.2d 70, 80 (D.C. Cir. 1984):

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

Courts often organize these factors into four basic inquiries:

> First, is there any rhyme or reason—congressionally prescribed or otherwise—for an agency's delay (factors one and two)? Second, what are the consequences of delay if the Court does not compel the agency to act (factors three and five)? Third, how might forcing the agency to act thwart its ability to address other priorities (factor four)? Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?

*Rahman v. Blinken*, No. 22-cv-2732, 2023 WL 196428, at *4 (D.D.C. Jan. 17, 2023) (citation modified). The Court addresses each of these inquiries below.

### 1. *TRAC* Factors 1 and 2

The first two factors weigh in favor of the Government. The Court must determine "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014). In this scenario, there is no congressionally imposed timeline for when the State Department must schedule a visa interview. *See Khan v. Blinken*, No. 23-cv-3474,

9

2024 WL 2880426, at *3 (D.D.C. June 7, 2024); *Mottahedan*, 2024 WL 124750, at *4.  Plaintiff acknowledges this, *see* Pl.'s Opp'n at 28–29, but nevertheless claims that Congress intended for the process to be concluded within two years from the date of investment based on the EB-5 Reform and Integrity Act of 2022 ("RIA"), Pl.'s Opp'n at 29.  The RIA provides that investments made according to 8 U.S.C. § 1153(b)(5)(A)(i) must be "expected to remain invested for not less than 2 years."  Pub. L. No. 117-103, § 102, 136 Stat. 49, 1070 (2022).  Plaintiff suggests that this is an "indication of the speed with which [Congress] expects the agency to act," Pl.'s Opp'n at 28–29, but if this were true, it makes little sense why Congress would not have imposed such a timeline explicitly, as it has done in other immigration contexts, *see, e.g.*, 8 U.S.C. § 1158(d)(5)(ii) ("[I]n the absence of exceptional circumstances, the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed.").  Given that "Congress has given the agencies wide discretion in the area of immigration processing," *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017), the Court is not persuaded that the RIA is an indication of the speed with which Congress expects the State Department to schedule interviews.

      In the absence of a statutory timeline, courts turn to caselaw to determine whether the delay is unreasonable.  *See Sarlak v. Pompeo*, No. 20-cv-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020).  Although there is no bright-line rule, district courts "have generally found that immigration processing delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable."  *Id.* (quoting *Yavari v. Pompeo*, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019)).

      Plaintiff claims that the delay in this case is over seven years, which is roughly the length of time that has passed since Plaintiff filed his Form I-526 petition.  *See* Pl.'s Opp'n at 28.

Defendants, however, assert that the delay is only 23 months, measuring from the last action the Government took, the date NVC determined the case to be documentarily complete (in March 2023), to the day Plaintiff filed this suit (in February 2025). Defs.' Mot. at 8. Courts in this District measure delay either as (1) the length of time between the last government action on a visa application and the filing of a plaintiff's complaint, *see Barazandeh v. Dep't of State*, No. 23-cv-1581, 2024 WL 341166, at *7 n.7 (D.D.C. Jan. 30, 2024); *Isse v. Whitman*, No. 22-cv-3114, 2023 WL 4174357, at *6 n.4 (D.D.C. June 26, 2023), or (2) the length of time between the last government action and the issuance of the opinion, *see Khan v. Blinken*, No. 23-cv-3474, 2024 WL 2880426, at *3 (D.D.C. June 7, 2024) (citing *Nusrat v. Blinken*, No. 21-cv-2801, 2022 WL 4103860, at *6 n.6 (D.D.C. Sept. 8, 2022)). This means that the delay in the adjudication of Plaintiff's visa is either around 23 months, as Defendants assert, or 32 months. Either way, courts in this District have routinely concluded that delays of less than three years do not constitute unreasonable delay. *See, e.g.*, *Khan*, 2024 WL 2880426, at *3 (finding that a two-and-a-half year delay in scheduling visa interview—measured from last government action (documentary qualification) to issuance of opinion—"does not approach unreasonable under the relevant case law"); *Diakanua v. Rubio*, No. 24-cv-1027, 2025 WL 958271, at *6 (D.D.C. Mar. 31, 2025) (finding two-and-a-half year delay in scheduling visa interview—measured the same way—not to be unreasonable and collecting cases).

Plaintiff claims, however, that the EB-5 immigrant visa application is "fundamentally distinct from other visa categories" in that it more closely resembles a contractual relationship with substantial financial investment at risk. Pl.'s Opp'n at 27, 31. He argues that the Court must consider this factor in addition to the length of delay. *Id.* Yet even in the context of EB-5 immigrant visas, courts in this District have found similar delays not unreasonable. *See, e.g.*,

11

*Bega v. Jaddou*, 2022 WL 17403123, at *7 (wait of between 32 and 40 months for adjudication of I-526 petitions not unreasonable as a matter of law); *Mottahedan,* 2024 WL 124750, at *4, 8 (holding delay of 14 months since interview not unreasonable as a matter of law).  The Court is not persuaded that the Plaintiff's significant investment is sufficient to tilt these factors in his favor.

The second part of this inquiry—whether the agency's action is governed by an identifiable rationale—also favors the Government.  In this case, the scheduling of immigrant visa interviews is based on when NVC determines that the case is documentarily complete, which is predicated on when the investor submits the necessary documents.  Courts in this District have routinely found that the government follows a "rule of reason" by applying a "first-in, first-out" methodology.  *See L'Association des Americains Accidentels v. Dep't of State*, 633 F. Supp. 3d 74, 82 (D.D.C. 2022); *Memon v. Blinken*, No. 22-cv-0754, 2023 WL 1438396, at *2 (D.D.C. Feb. 1, 2023); *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 51 (D.D.C. 2021).  Scheduling interviews in the order that the cases become documentarily complete is a "rule of reason" sufficient to tilt the first *TRAC* factors in favor of the Government.  *See Khan*, 2024 WL 2880426, at *3.  Because the delay in scheduling Plaintiff's interview is not unreasonably long under relevant caselaw and the Government has acted according to an identifiable rationale, the first and second *TRAC* factors weigh toward the Government.

### 2. *TRAC* Factors 3 and 5

The third and fifth factors also weigh in Defendants' favor.  "The third and fifth [*TRAC*] factors overlap—the impact on human health and welfare and economic harm, and the nature and extent of the interests prejudiced by the delay." *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 118 (D.D.C. 2005).  As Plaintiff explains, he "placed his hard-earned money at risk in

compliance with the INA in this country under the EB-5 program relying exclusively on the promise of the United States government to have the opportunity to apply for permanent residence in this country." Pl.'s Opp'n at 32. He does not know when the process is going to be completed. *Id.* He has suffered "emotional stress and anxiety" as a result. *Id.*

This generally applicable assertion, however, is insufficient to weigh heavily in Plaintiff's favor. *See Da Costa*, 80 F.4th at 345 (finding that financial harms and "the uncertainty that results any time an individual must continue to wait to secure a benefit" are "insufficient to tip *TRAC* factors three and five in [plaintiff's] favor"). Plaintiff has failed to allege the kind of unique harm to human health and welfare that would tilt the third and fifth factors in his favor; for example, that he is "unable to access electricity, water, food, or shelter." *See id.* Thus, these factors favor the Government.

### 3. *TRAC* Factor 4

The fourth *TRAC* factor weighs heavily in Defendants' favor. This factor considers the effect of expedition on an agency's competing priorities. It "carries the greatest weight in many cases," and indeed, "this circuit has refused to grant relief" based on the fourth factor "even [when] all the other factors considered in *TRAC* favored it." *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020) (citation modified). This is because "[c]ourts are generally hesitant to direct agencies which tasks to prioritize, particularly if such intervention would move the petitioner to 'the head of the queue' and 'simply move[] all others back one space.'" *Lee v. Blinken*, No. 23-cv-1783, 2024 WL 639635, at *6 (D.D.C. Feb. 15, 2024) (quoting *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991)). In other words, courts disfavor relief when it necessarily comes "at the expense of other similarly situated applicants" with "no net gain" in

13

adjudications achieved. *Da Costa*, 80 F.4th at 343–44 (first quoting *Burwell*, 812 F.3d at 192; and then quoting *In re Barr Lab'ys, Inc.*, 930 F.2d at 75).

An order mandating Defendant to complete the processing of Plaintiff's immigration visa is "the very type of agency action . . . that if compelled would presumably delay other adjudications." *Xiaobing Liu v. Blinken*, 544 F. Supp. 3d 1, 13 (D.D.C. 2021) (citing *Skalka*, 246 F. Supp. 3d at 154). And although "the effect of an individual case would be minimal, an accumulation of such individual cases being pushed by judicial fiat to the front of the line would erode the ability of agencies to determine their priorities." *Tate v. Pompeo*, 513 F. Supp. 3d 132, 150 (D.D.C. 2021). Accordingly, this factor favors Defendants.

### 4. *TRAC* Factor 6

The sixth factor is neutral. Plaintiff does not allege any bad faith, *see generally* Compl., but "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed," *TRAC*, 750 F.2d at 80.

\*   \*   \*

The Court finds that the delay in this case, between 23 and 32 months, is not impermissibly long under the relevant caselaw, that the Government schedules interviews based on a rule of reason, and that the alleged emotional stress Plaintiff claims is insufficient to make such length of time unreasonable. And importantly, expediting his interview would have a negative effect on the Government's competing priorities, namely the adjudication of visas for cases that became documentarily complete before Plaintiff's. Based on these considerations, the Court finds that the Government's delay in scheduling Plaintiff's interview is not unreasonable and does not warrant relief under the Mandamus Act or APA.

### C. Due Process Claim

Finally, Defendant moves to dismiss Plaintiff's due process claim. Defs.' Reply at 15. It is unclear whether Plaintiff bases his claim on a procedural or substantive theory. Either way, his claim fails. "To succeed on a substantive due process claim, a plaintiff must show 'violation of a fundamental right deeply rooted in this Nation's history.'" *Azeez v. Murphy*, No. 23-cv-1947, 2024 WL 3924565, at *6 (D.D.C. Aug. 23, 2024) (quoting *Mahmood v. U.S. Dep't of Homeland Sec.*, No. 21-cv-1262, 2021 WL 5998385, at *9 (D.D.C. Dec. 20, 2021)) (citation modified). For a procedural due process claim, a plaintiff must show that he has been deprived "of a liberty or property interest without providing appropriate procedural protections." *Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009). "Under either theory, a plaintiff must allege [he or] she 'has been deprived of a fundamental right or liberty or property interest.'" *Akrayi v. U.S. Dept. of State*, No. 22-cv-1289, 2023 WL 2424600, at *6 (D.D.C. Mar. 9, 2023) (quoting *Meyou v. U.S. Dep't of State*, No. 21-cv-2806, 2022 WL 1556344, at *5 (D.D.C. May 17, 2022)).

Plaintiff claims that the State Department's "delay in completing [his] permanent residence application process" violated his due process rights and that he has "an inherent right on his investment funds." Pl.'s Opp'n at 32. These claims fail because "an applicant for initial entry has no constitutionally cognizable liberty interest in being permitted to enter the United States." *Rafeedie v. INS*, 880 F.2d 506, 520 (D.C. Cir. 1989). Nor is there "a constitutionally-protected interest in the procedures by which such visas are obtained." *Smirnov v. Clinton*, 806 F.Supp.2d 1, 12 (D.D.C. 2011) (citing *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State, Bureau of Consular Aff.s*, 104 F.3d 1349, 1353 (D.C. Cir. 1997)). Plaintiff's investment in accordance with the EB-5 program does not change the analysis. *See Tingzi Wang v. U.S.*

*Citizenship & Immigr. Servs.*, 375 F. Supp. 3d 22, 40–41 (D.D.C. 2019) (finding no cognizable liberty or property interest implicated in the "the proper adjudication" of an EB-5 visa petition). Because Plaintiff has not shown that the delay in the adjudication of his visa deprived him of a protected liberty or property interest, nor deprived him of a fundamental right deeply rooted in this Nation's history, as is necessary to succeed on either a procedural or substantive claim, the Court will dismiss Plaintiff's due process claim.

### V. USE OF NONEXISTENT CASES AND QUOTATIONS

As this Court has observed, "[c]ourts have recently seen increasing reliance on artificial intelligence in legal proceedings, leading to the use of nonexistent citations in court documents." *Williams v. Cap. One Bank*, N.A., No. 24-cv-2032, 2025 WL 843285, at *7 (D.D.C. Mar. 18, 2025) (collecting cases). It appears that Mr. Ekeocha's counsel, Dr. Olusegun Asekun, may have relied on artificial intelligence to draft Mr. Ekeocha's Opposition, as it contains case citations that do not appear to exist and quotations that do not appear in the cases to which they are attributed. *See* Pl.'s Opp'n at 10 (citing "*Litvin v. Blinken*, 93 F.4th 1162, 1168 (D.C. Cir. 2024)," which does not appear to exist); *id.* at 11 (attributing a quote to *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Service to the United States v. Kerry*, 168 F. Supp. 3d 268, 289 (D.D.C. 2016), that does not appear in the opinion).

Dr. Asekun is advised that it is not acceptable to submit filings to the Court containing nonexistent cases and quotations. Such conduct contravenes an attorney's duty toward his client to exercise professional judgment and responsibility. *See Park v. Kim*, 91 F.4th 610, 614 (2d Cir. 2024). In particular, Rule 11(b)(2) of the Federal Rules of Civil Procedure provides that "[b]y presenting to the court a pleading, written motion, or other paper," an attorney "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable

16

under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law . . . ." Fed. R. Civ. P. 11(b)(2).  Further, Rule 3.3(a)(1) of the District of Columbia Rules of Professional Conduct provides that an attorney "shall not knowingly . . . [m]ake a false statement of fact or law to a tribunal." D.C. R. Pro. Conduct 3.3(a)(1).  The Court agrees with the Second Circuit that, at minimum, such rules "require that attorneys read, and thereby confirm the existence and validity of, the legal authorities on which they rely." *Park*, 91 F.4th at 615.

Courts have taken diverse disciplinary actions against attorneys who have filed pleadings and other court papers citing nonexistent legal authorities and quotations, ranging from striking the pleadings, *see, e.g., Grant v. City of Long Beach*, 96 F.4th 1255, 1256–57 (9th Cir. 2024); to ordering counsel to show cause why sanctions should not issue, *see, e.g., Mata v. Avianca, Inc.*, No. 22-cv-1461, 2023 WL 3696209, at *1 (S.D.N.Y. May 4, 2023); and referring counsel to a court's grievance panel, *see, e.g.*, *Park*, 91 F.4th at 612.  Because the Court grants Defendants' motion to dismiss, it refrains from taking further action against Dr. Asekun at this time.  However, if this case somehow returns to this Court, Dr. Asekun will be required to show cause why he ought not be sanctioned for his use of nonexistent cases and quotations in his filing.

## VI.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 9) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  November 19, 2025               RUDOLPH CONTRERAS
                                         United States District Judge